**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

TODD JAGER,

        Plaintiff,

v.                                               Civ. No. 18-743 GBW/CG

JAMES MULHERON, *et al.*,

        Defendants.


**MEMORANDUM OPINION AND ORDER**

THIS MATTER is before the Court on Defendant James Mulheron's Motion to Dismiss for Failure to State a Claim and Qualified Immunity (*doc. 18*) and the attendant briefing (*docs. 23, 28*). For the following reasons, the Court hereby DENIES the Motion.

## I.    Factual Background

On a motion to dismiss, the Court takes as true all well-pleaded facts alleged by the non-moving party. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The applicable version of events is that asserted by Plaintiff, and the following recitation is therefore drawn directly from the Complaint. *See Peterson v. Jensen*, 371 F.3d 1199, 1201 (10th Cir. 2004) (on a motion to dismiss, "we adopt the facts as stated in the complaint").

Plaintiff filed the Complaint in this action on August 3, 2018. *Doc. 1.* At all relevant times, Plaintiff was incarcerated in Doña Ana County, New Mexico, at the

Southern New Mexico Correctional Facility ("SNMCF").[1]  *Id*. at 1–2.  During the same period, Defendant Mulheron served as warden of the SNMCF.  *Id*.

On May 31, 2016, another inmate attacked Plaintiff, punching him in the face.  *Id*. at 6–7.  Plaintiff received medical attention at the SNMCF infirmary, where it was determined that he had "severe injuries to his face, including a deformity noted as an 'indented' cheek bone."  *Id*. at 7.  On June 1, 2016, Plaintiff was transported to Memorial Medical Center ("MMC") and had x-rays taken.  The radiologist's report included a finding of separated facial bones and recommended a CT scan to look for facial fractures.  *Id*.  Defendant Klinger, a Certified Nurse Practitioner at SNMCF (*id*. at 3), requested approval for a CT scan on June 7, 2016.[2]  *Id*. at 8.  The request was marked "routine" rather than "urgent."  *Id*.  Importantly for purposes of Defendant Mulheron's liability, Plaintiff also alleges that:

> The CT scan of Mr. Jager's injuries was also delayed due to custom and/or policy at the SNMCF that prisoners cannot be transported for medical appointments during lockdown, and the SNMCF was in lockdown starting on June 8, 2016.

*Id*.  Defendant Mulheron, as warden, "promulgated, implemented, enforced and/or maintained" this policy.  *Id*. at 15.  Plaintiff does not, however, specify the duration of the June 8, 2016 lockdown.

---

[1] Plaintiff was no longer in custody at the time of filing.  *Id*. at 1.

[2] Plaintiff notes that, while Defendant Centurion Correctional Healthcare of New Mexico ("CCH of NM") generally approved medical services to prisoners at SNMCF through a request process, Defendants Andrade and Klinger could seek "retroactive" approval and were not required to wait for a decision by CCH of NM.  *Id*. at 6.  However, Plaintiff's claims against Defendants Klinger and Andrade are not at issue in the present Motion to Dismiss.

On June 24, 2016, more than three weeks after the initial attack, Plaintiff was again transported to MMC for a CT scan. *Id*. at 8. The radiologist diagnosed a "[q]uadripod fracture of the left orbit with severe associated deformity," as well as "significant" fractures of the sinus and zygoma (cheekbone) and a displaced cheekbone. *Id*. at 9. Though Defendant Andrade was aware of the need for surgery as of July 2, 2016,[3] he did not request a surgical consult until July 11, 2016, six weeks after the initial injury. *Id*. at 9–10. Plaintiff was finally taken to see an otolaryngologist on September 29, 2016, but new CT scans were required before proceeding. *Id*. at 12. Defendant Klinger additionally requested a non-urgent ophthalmology consult on July 26, 2016. *Id*. at 10. On August 1, 2016, an ophthalmology appointment was approved for October 10, 2016.[4] *Id*. At the appointment, the ophthalmologist indicated that a new CT scan would be needed before discussing surgery. *Id*. at 12.

Defendant Andrade requested a new CT scan on October 8, 2016, and it was performed on October 20, 2016. *Id*. Plaintiff's "left facial fractures" were reidentified on the updated scan, and on December 1, 2016—26 weeks after the initial injury—Plaintiff was seen by a surgical specialist. *Id*. at 13. Bones fuse within four to six weeks after fracture (*id*. at 10), and the specialist explained that Plaintiff's bones had "healed

---

[3] According to the Complaint, Defendant Andrade's June 25, 2016 Progress Notes indicated that Plaintiff "may need surgery," while his July 2, 2016 Progress Notes indicated that Plaintiff "needed surgery as soon as possible." *Id*. Shortly thereafter, on July 4, 2016, the SNMCF requested that Plaintiff be transferred to another state prison "for 'medical' reasons." *Id*.
[4] Later in the Complaint, Plaintiff indicates that the appointment took place on October 6, 2018. *Id*. at 12. Given the overall timeline of events, this appears to be a typographical error.

incorrectly, causing permanent injuries, including a visible facial deformity" (*id*. at 13).
The only possible courses of treatment were either to insert a facial implant or to
rebreak the facial bones and reset them. *Id*. Both options carried significant potential
complications including "blindness, drastic head and facial scarring, pain, and a long
healing period." *Id*. From the time of the initial attack to the December 1 surgical
consult, Plaintiff made numerous complaints of pain and other significant symptoms
via Health Service Request Forms and in conversations with Defendants Klinger and
Andrade. *See id*. at 8, 11, 14.

Plaintiff filed the instant action on August 23, 2018, asserting claims against
several defendants. *Doc. 1*. Defendant Mulheron is named only in Count II, which
alleges violation of civil rights guaranteed by the Eight Amendment and enforceable
through § 1983 of the Civil Rights Act of 1871. *Id*. at 14, 15. Defendant Mulheron moves
to dismiss all claims against him based on qualified immunity and failure to state a
claim. *Doc. 18*. Plaintiff claims that Defendant Mulheron "promulgated, implemented,
enforced and/or maintained" a policy that prisoners could not be transported for
medical appointments during lockdown. *Doc. 1* at 15. Plaintiff further alleges that this
policy was a cause of the delay in receiving medical treatment for his injuries, and that
it deprived him of reasonable medical care. *Id*.

## II.    Standard of Review

### A. Motion to Dismiss Under 12(b)(6)

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint "must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Leverington v. City of Colorado Springs*, 643 F.3d 719, 723 (10th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 678). This standard does not require "detailed factual allegations," but it does require more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). When ruling on a 12(b)(6) motion, the court must "assume the truth of all well-pleaded facts in the complaint, and draw all reasonable inferences therefrom in the light most favorable to the plaintiffs." *Leverington*, 643 F.3d at 723 (quoting *Dias v. City and Cty. of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009)). However, the court need not accept the truth of any legal conclusions. *Iqbal*, 556 U.S. at 678.

The plausibility standard "does not impose a probability requirement." *Twombly*, 550 U.S. at 556. Rather, "a well-pleaded complaint may proceed even if it appears 'that a recovery is very remote and unlikely.'" *Twombly*, 550 U.S. at 556 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)). The complaint must only be "enough to raise a right to relief above the speculative level…on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id*. at 555. In other words, the well-pleaded facts must "permit the court to infer more than the mere

possibility of misconduct"; otherwise, the plaintiff has not shown entitlement to relief. *Iqbal*, 556 U.S. at 679.

B.  Qualified Immunity

Government employees acting under color of state law are immune from suit unless their conduct violates "clearly established" federal law. *Pearson v. Callahan*, 555 U.S. 223, 231–32 (2009). Qualified immunity is not, strictly speaking, a defense, but rather "an immunity from suit" intended to relieve state actors from the burden of unnecessary trial and discovery. *Id*. Accordingly, the question of qualified immunity should be resolved "at the earliest possible stage in litigation." *Id*. at 232 (internal citation omitted). Nevertheless, summary judgment is the "typical vehicle" for asserting qualified immunity, and raising the issue of qualified immunity on a motion to dismiss "subjects the defendant to a more challenging standard of review." *Peterson*, 371 F.3d at 1201.

On a motion to dismiss based on qualified immunity, courts must consider both (1) whether the facts alleged "make out a violation of a constitutional right," and (2) whether "the right at issue was clearly established at the time of defendant's alleged misconduct." *Leverington*, 643 F.3d at 732 (quoting *Pearson*, 555 U.S. at 232). The plaintiff carries the "heavy two-part burden" of showing both (1) and (2). *Thomas v. Kaven*, 765 F.3d 1183, 1194 (10th Cir. 2014) (internal quotation omitted). The Court need

not answer these questions sequentially, and may use its "sound discretion" in determining which prong to address first. *Pearson*, 555 U.S. at 236 (2009).

Although the *Twombly* standard may sometimes have "greater bite" in the qualified immunity context, there is no heightened pleading standard for cases in which a defendant claims qualified immunity, and the complaint need not include "all the factual allegations necessary to sustain a conclusion that defendant violated clearly established law." *Robbins v. Oklahoma ex rel. Dep't of Human Servs.*, 519 F.3d 1242, 1249 (10th Cir. 2008). Instead, the operative question is whether the plaintiff "[pleaded] factual matter that, if taken as true, states a claim that [defendants] deprived him of his clearly established constitutional rights." *Iqbal*, 556 U.S. at 666. As with any motion to dismiss, "all well-pleaded factual allegations in the . . . complaint are accepted as true and viewed in the light most favorable to the non-moving party." *Brown v. Montoya*, 662 F.3d 1152, 1162 (10th Cir. 2011) (internal quotation omitted). However, the well-pleaded facts must "nudge [plaintiff's] claims across the line from conceivable to plausible." *Id*. (quoting *Twombly*, 550 U.S. at 570).

### III.     Analysis

In his Motion to Dismiss, Defendant Mulheron argues that Plaintiff's allegations regarding his conduct are "conclusory" and unsupported by sufficient facts, such that they fail to state a claim of deliberate indifference. *Doc. 18* at 7, 8. He further argues that Plaintiff "has not alleged any clearly established right to transport to medical

appointments under the circumstances of the case." *Id*. at 7. Finally, he asserts that

Plaintiff's injuries were not the result of Defendant Mulheron's alleged policy. *See id*. at

7, 8 ("Plaintiff has failed to plead sufficient facts that any delay in treatment was the

result of any unconstitutional policy or custom of Defendant Mulheron"). The Court

addresses each of these arguments in turn.

A. Plaintiff has sufficiently alleged a claim of deliberate indifference.

"Restrictive [or] even harsh" prison conditions do not necessarily form the basis

of a constitutional claim. *Ledbetter v. City of Topeka*, 318 F.3d 1183, 1188 (10th Cir. 2003)

(quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)). Rather, the Eighth Amendment is

violated only when inmates are denied "the minimal civilized measure of life's

necessities." *Id*. (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). The government has

a constitutional obligation to provide medical care to prisoners, and "deliberate

indifference to serious medical needs of prisoners" constitutes such a violation. *Estelle

v. Gamble*, 429 U.S. 97, 103–04 (1976). Consequently, "deliberate indifference to a

prisoner's serious illness or injury states a cause of action under § 1983." *Id*. at 104–05.

Not all inadequate medical treatment is sufficient to allege a constitutional

violation, however. A prison official violates the Eighth Amendment only where (1) the

alleged deprivation is "sufficiently serious" and (2) the prison official acts with

"deliberate indifference" to the inmate's health. *Farmer v. Brennan*, 511 U.S. 825, 834

(1994); *see also Redmond v. Crowther*, 882 F.3d 927, 939 (10th Cir. 2018) (referring to the two prongs as the "objective component" and "subjective component," respectively).

Generally, a prisoner's medical condition "is sufficiently serious if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000) (internal quotation and citation omitted). Where medical treatment is delayed, rather than refused altogether, the plaintiff has an additional burden of showing "that the delay resulted in substantial harm." *Garrett v. Stratman*, 254 F.3d 946, 950 (10th Cir. 2001); *see also Redmond*, 882 F.3d at 939 (quoting *Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005)) ("A delay in medical care is only sufficiently serious if 'the plaintiff can show the delay resulted in substantial harm.'"). This requirement "may be satisfied by lifelong handicap, permanent loss, or considerable pain," though this list is not necessarily exclusive. *Mata*, 427 F.3d at 751, 753 (quoting *Garrett*, 254 F.3d at 950). The Tenth Circuit has explained that "the purpose for [the sufficiently serious] requirement is to limit claims to significant, as opposed to trivial, suffering." *Id*. at 753. The relevant question in determining whether the objective component is satisfied is not whether the symptoms appeared sufficiently serious at the time of the alleged deprivation, but rather "whether the alleged harm

[caused by the delay] is sufficiently serious."[5]  *Id*. at 753 (finding that the plaintiff's

severe chest pain and subsequent heart attack were sufficiently serious).

In addition to showing a sufficiently serious medical need, Eighth Amendment

claimants must also show "deliberate indifference" by the prison employee.  The

requisite level of culpability can be compared to criminal recklessness.  *Farmer*, 511 U.S.

at 839.  A prison employee is deliberately indifferent when he "knows of and disregards

an excessive risk to inmate health or safety."  *Id*. at 837.  The official need not foresee

harm to a particular inmate; it is enough that to show that he "acted or failed to act

despite his knowledge of a substantial risk of serious harm."  *Id*. at 842–43.  However, it

is not enough to show that a substantial risk existed, or even that a substantial risk

existed and the prison official should have known of it.  The official must both be

"aware of the facts from which the inference could be drawn that a substantial risk of

serious harm exists, and he must also draw the inference."  *Id*. at 837.

For purposes of this Motion to Dismiss, Plaintiff has clearly satisfied the objective

component of the deliberate indifference standard.  Although Defendant Mulheron

contends that, ultimately, "all radiology scans and consultations requested were

provided" (*doc. 18* at 8; *doc. 28* at 2), a delay in treatment can provide the basis for an

---

[5] The apparent seriousness of the prisoner's symptoms at the time of the deprivation *is*, of course,
relevant to the subjective component.  *Id*. at 753 ("were the symptoms such that a prison employee knew
the risk to the prisoner and chose (recklessly) to disregard it?").  Apparent seriousness is irrelevant only
to the *objective* component.

Eighth Amendment claim even where the plaintiff does eventually receive treatment. The facts recited in the Complaint demonstrate that substantial harm resulted from the delay in Plaintiff's treatment. Specifically, the treatment of Plaintiff's facial fractures was so delayed that his bones fused incorrectly in the interim, causing "permanent injuries, including a visible facial deformity." *Doc. 1* at 13. The delay has made treatment more difficult, with few options and several potentially severe complications, including "blindness, drastic head and facial scarring, pain, and a long healing period." *Id*. In addition, during the protracted period following the initial injury, Plaintiff experienced considerable discomfort including difficulty opening his mouth and chewing (*id*. at 8) and "ongoing pain that was not relieved by Naproxen or Tramadol" (*id*. at 10). Ultimately, Plaintiff did not receive a surgical consult until twenty-six weeks after the injury despite numerous requests for medical help. *Id*. at 11–13. Plaintiff alleges that "the standard of care for a patient with Maxillofacial CT Scan results showing fractures like Mr. Jager's is to send the patient to an ophthalmologist and otolaryngologist immediately." *Id*. at 10. Plaintiff's medical needs were certainly not "trivial," *Mata*, 427 F.3d at 753, and the delay in treatment has caused both permanent deformity and considerable pain. Accordingly, Plaintiff has pleaded sufficiently serious injuries to state a claim under the Eighth Amendment.

Turning to the subjective component, because the case is before the Court on a 12(b)(6) motion, the Court assumes the truth of Plaintiff's allegation that Defendant

Mulheron "promulgated, implemented, enforced and/or maintained" a policy that "prisoners cannot be transported for medical appointments during lockdown." *Doc. 1* at 15. Defendant contends that "Plaintiff makes no allegation that it was Defendant's policy to preclude any and all transport for medical appointments, regardless of need." *Doc. 18* at 7. However, this appears to be precisely what Plaintiff alleges. *See doc. 1* at 15 ("At the relevant time, the SNMCF's policy and Defendant CCH of NM's policy was that prisoners cannot be transported for medical appointments during lockdown."). Plaintiff argues in his Response to Defendant Mulheron's Motion to Dismiss that he "[pleaded] this as a blanket policy," (*doc. 23* at 3), which is entirely consistent with the wording of the Complaint. Accordingly, for purposes of the Motion to Dismiss, the Court assumes that Defendant Mulheron implemented, promulgated or enforced a blanket policy prohibiting the transport of prisoners for medical appointments during lockdown.

With this assumption in mind, Plaintiff has sufficiently alleged deliberate indifference to a substantial risk of serious harm to inmate health and safety. A policy or custom that refused transport for prisoners' medical needs, no matter how urgent, during the entire span of any lockdown, would create such a risk. Indeed, Defendant Mulheron does not explicitly argue otherwise, though he does contend that prisoners have fewer procedural rights during lockdown. *Doc. 18* at 6–7. In *Buchanan v. Oklahoma*, 2010 U.S. Dist. LEXIS 34771, at *28 (W.D. Okla. Mar. 4, 2010) (unpublished),

cited by Defendant, the court dismissed the plaintiff's deliberate indifference claim because "the alleged deprivations…were attributable to the exigencies caused by the facility's having been placed on lockdown status—not to a conscious disregard for Plaintiff's medical needs." However, the plaintiff in *Buchanan* did not allege the existence or unconstitutionality of any lockdown policy denying medical treatment and, in consequence, the plaintiff had to show deliberate indifference to his specific medical needs. The facts of the instant case are quite different because Plaintiff has alleged an unconstitutional *policy* of withholding treatment. To the extent Defendant Mulheron argues he was unaware "that a delay in getting a CT-scan would cause 'a substantial risk of serious harm'" to Plaintiff (*doc. 18* at 7), that lack of knowledge is not dispositive. A policy of withholding medical treatment could well violate the Constitution without knowledge of a specific inmate's medical peril. *See Farmer*, 511 U.S. at 843–44 ("If, for example, prison officials were aware that inmate 'rape was so common and uncontrolled that some potential victims dared not sleep…' it would obviously be irrelevant to liability that the officials could not guess beforehand precisely who would attack whom."). Plaintiff is not required to show that Defendant Mulheron knew the policy would harm Plaintiff in particular.

At most, *Buchanan* and the other cases cited in the Motion to Dismiss establish that prison lockdown is a sufficient justification for canceling or delaying *some* medical appointments, but not *all* medical appointments regardless of need. Indeed, as Plaintiff

notes in his Response, the two cited opinions that mention medical treatment explain that adequate medical care was provided during lockdown. *See Jones v. Marquez*, 526 F. Supp. 871, 882 (D. Kan. 1981) ("[n]either deliberate indifference nor the existence of serious medical needs" was presented where "routine and emergency medical attention was made available to and occasionally utilized by plaintiffs while they were in administrative segregation"); *Miller v. Campbell*, 804 F. Supp. 159, 162 (D. Kan. 1992) (finding constitutionally adequate medical care during lockdown where "Plaintiff received medication and ongoing medical attention, including X-rays at the local hospital and dental care"). Moreover, the non-medical deprivations alleged during the lockdown in *Miller*—namely, turning off water and electricity—were "relatively brief" and "reasonably related to legitimate correctional goals" such as preventing flooding. *Id*. Nothing in these cases suggests that, had the plaintiffs been denied medical care during lockdown, they would not have presented cognizable Eighth Amendment claims.

Defendant Mulheron argues that "Plaintiff has failed to plead sufficient facts…that Defendant Mulheron knew of and disregarded an excessive risk to Plaintiff's health and safety." *Doc. 28* at 3. However, this contention must rest on the premise that "Plaintiff makes no allegation that it was Defendant's policy to preclude any and all transport for medical appointments, regardless of need." *Id*. at 2. Where, as in this case, the Plaintiff *does* allege such a policy, the substantial risk of serious harm inherent in

that policy is clear: a prisoner who urgently needs to leave the prison for an appointment during lockdown, but is not permitted to do so for a potentially significant length of time, is obviously likely to suffer serious harm. From the very fact that the risk is obvious, moreover, the factfinder may conclude that Defendant Mulheron was aware of it. *See Farmer*, 511 U.S. at 842. Again, it is not necessary for Defendant Mulheron to have foreseen the particular risk to Plaintiff. *See Farmer*, 511 U.S. at 843–44. Plaintiff need only show that Defendant Mulheron was aware of the substantial risk of harm posed by the policy generally.

Ultimately, Plaintiff must prove that Defendant Mulheron actually drew the inference that his policy created a substantial risk of serious harm. *Farmer*, 511 U.S. at 837. This is generally a "question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Farmer*, 511 U.S. at 842. *See also Mata*, 427 F.3d at 752 (to survive summary judgment on a deliberate indifference claim, the plaintiff must "provide evidence supporting an inference that defendants knew about and disregarded a substantial risk of harm to her health and safety"). Questions of fact are not appropriately resolved on a motion to dismiss. *See Iqbal*, 556 U.S. at 678. At this stage, Plaintiff has alleged sufficient facts to suggest that the risk of substantial harm inherent in such a policy—namely, that

inmates might suffer severe harm while being denied urgent medical treatment—would

be apparent to a reasonable official.

B.  Plaintiff's right to medical treatment was clearly established.

In addition to alleging a cognizable constitutional violation, Plaintiff must show

that the constitutional right at issue was clearly established at the time of the alleged

violation.  The right must be "sufficiently clear that every reasonable official would

have understood that what he is doing violates that right."  *Redmond*, 882 F.3d at 935.  A

right is clearly established when there is a Supreme Court or Tenth Circuit opinion on

point or the "clearly established weight of authority from other courts" supports the

plaintiff's claim.  *Id.*  The constitutional question must be "beyond debate," such that

"all but the plainly incompetent or those who knowingly violate the law" are protected.

*Id.* (quoting *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015)).  Existing precedent must be

"particularized to the facts of the case," but the facts need not be identical.  *Bailey v.

Indep. Sch. Dist. No. 69*, 896 F.3d 1176, 1184 (10th Cir. 2018) (quoting *White v. Pauly*, 137

S. Ct. 548, 552 (2017)).  "A general test defining the elements of a constitutional

violation…will not provide clearly established law in anything but 'an obvious case.'"

*Id.* (quoting *White*, 137 S. Ct. at 552).

Broadly, "there is little doubt that deliberate indifference to an inmate's serious

medical need is a clearly established constitutional right[.]"  *Mata v. Saiz*, 427 F.3d at

749.  Neither Plaintiff nor Defendant Mulheron has referenced a Tenth Circuit or

Supreme Court case in which a warden's policy of withholding all medical treatment during certain periods was (or was not) found to constitute deliberate indifference. However, in an "obvious case," general rules may clearly establish a right "even without a body of relevant case law." *Pauly v. White*, 874 F.3d 1197, 1208 (10th Cir. 2017) (quoting *Hope v. Pelzer*, 536 U.S. 730, 738 (2002)). Whether a right has been clearly established is measured on a sliding scale: "[t]he more obviously egregious the conduct in light of prevailing constitutional principles, the less specificity is required from prior case law to clearly establish the violation." *Id*. at 1208. The touchstone is that "in the light of pre-existing law the unlawfulness must be apparent." *Hope*, 536 U.S. at 739 (internal quotation and citations omitted). Specifically, "there must be Tenth Circuit or Supreme Court precedent close enough on point to make the unlawfulness of the officers' actions apparent." *Pauly*, 874 F.3d at 1222 (quoting *Mascorro v. Billings*, 656 F.3d 1198, 1208 (10th Cir. 2011)).

Prisoners have a clearly established right to medical care, *Estelle*, 429 U.S. 97 at 103, and prison officials violate the Eighth Amendment when they manifest indifference to prisoners' serious medical needs by "intentionally delaying or denying access to medical care that has been prescribed." *Hunt v. Uphoff*, 199 F.3d 1220, 1224 (10th Cir. 1999). Deliberate indifference may also be "shown by proving there are such gross deficiencies in staffing, facilities, equipment, or procedures that the inmate is effectively denied access to adequate medical care." *Garcia v. Salt Lake County*, 768 F.2d 303, 308

(10th Cir. 1985).  In *Garcia*, a County policy of admitting unconscious arrestees who were suspected of being intoxicated into pretrial detainment, resulting in the plaintiff's death after being admitted to jail while unconscious, constituted deliberate indifference to serious medical needs.[6]  *Id*.  Finally, and more broadly, prison officials are deliberately indifferent when they "prevent an inmate from receiving treatment or deny him access to medical personnel capable of evaluating the need for treatment."  *Sealock*, 218 F.3d at 1211.  The court in *Sealock* denied summary judgment for a prison official who refused to transport an inmate showing signs of a heart attack to the hospital, and instead made the inmate wait for treatment until staff arrived at prison Clinical Services.  *Id*. at 1210.  The court also denied summary judgment in favor of a medical professional acting in a "gatekeeping" role[7] for failing to call an ambulance despite possible knowledge of the plaintiff's symptoms.  *Id*. at 1211–12.

Based on this precedent, it should be clear to any reasonable official that a policy of prohibiting all transport to medical appointments regardless of need, during lockdowns of any length, violates the strictures of the Eighth Amendment.  This alleged policy, and Defendant Mulheron's alleged creation, promulgation or enforcement of it, make this an "obvious case" for which highly specific factual similarity is not required.

---

[6] Though the plaintiff in *Garcia* was a pretrial detainee rather than a prisoner, the Tenth Circuit has clearly stated that the same standard applies for deliberate indifference to serious medical needs in both contexts.  *Garcia*, 768 F.2d at 307.

[7] The court noted that the "gatekeeping role" is most commonly held by prison officials who are not qualified to provide medical treatment, but who control prisoners' access to medical professionals. *Sealock*, 218 F.3d at 1211.

*Sealock* and *Hunt* provide fair warning that a prison warden who denies prisoners access to needed or prescribed medical care is liable under the Eighth Amendment. *Garcia* provides fair warning that a policy of denial of adequate medical care constitutes deliberate indifference. It has also been clearly established for well over a decade that a harmful delay in providing medical treatment, as opposed to the total denial of treatment, can form the basis for a deliberate indifference claim. *Garrett*, 254 F.3d at 950.

It requires no great stretch of understanding to see that a policy of denying prisoners access to all medical transport for appointments during lockdowns, no matter how long the lockdown or how urgent the medical need, is unconstitutional. The applicable standard is not whether a case exists with an identical set of facts, but rather whether the unlawfulness of the action is "apparent." *Hope*, 536 U.S. at 739 (internal quotation and citations omitted). Here, the body of existing case law concerning prisoners' right to medical treatment creates "fair warning" to prison officials that the kind of conduct alleged "crosse[s] the line of what is constitutionally permissible." *Id*. at 743.

Going forward, of course, Plaintiff will bear the burden of establishing the existence of the alleged policy, as well as Defendant Mulheron's involvement in it. Moreover, if the relevant policy is discovered to be more nuanced than alleged, the clearly established analysis may be dramatically different. At this stage, however,

Plaintiff has sufficiently alleged the violation of a clearly established right to medical treatment.

C. <u>Plaintiff has sufficiently alleged that Defendant Mulheron's lockdown policy was a cause of the delay in treatment.</u>

Because there is no *respondeat superior* liability under § 1983, individual liability "must be based on personal involvement in the alleged constitutional violation." *Duffield v. Jackson*, 545 F.3d 1234, 1238 (10th Cir. 2008) (internal quotation and citation omitted). Beyond showing deliberate indifference and the violation of a clearly established constitutional right, therefore, the plaintiff must show an "affirmative link between each defendant and the constitutional deprivation." *Id.* (internal quotation and citation omitted). Plaintiffs can show such a link "by demonstrating: (1) the defendant promulgated, created, implemented or possessed responsibility for the continued operation of a policy that (2) caused the complained of constitutional harm, and (3) acted with the state of mind required to establish the alleged constitutional deprivation." *Dodds v. Richardson*, 614 F.3d 1185, 1199–1200 (10th Cir. 2010). Plaintiff has not alleged that Defendant Mulheron knew specifically of Plaintiff's medical needs and chose to ignore them. Rather, he alleges that Defendant Mulheron was responsible for creating or enforcing an unconstitutional policy which led to the constitutional harm complained of. *Doc. 1* at 15. Since Plaintiff has adequately pleaded elements (1) and (3), as explained in the previous sections, *supra*, the final question is whether Defendant

Mulheron's policy (assuming the facts as alleged by Plaintiff) caused the constitutional harm.

Defendant Mulheron contends that the delay in Plaintiff's treatment was not caused by either of the lockdowns referred to in the complaint. Specifically, he argues in his Motion to Dismiss that "Plaintiff has not alleged that any medical transport for Plaintiff was requested during lockdown, much less that transport or treatment was refused or ignored as a result of Defendant Mulheron's alleged policy." *Doc. 18* at 7. With respect to the allegation that Plaintiff's otolaryngologist appointment was also delayed due to the lockdown policy, Defendant Mulheron correctly notes that "none of the requests for any consultations or radiology studies were reported as urgent to the SNMCF or Defendant Mulheron," and asserts that "Plaintiff has failed to plead sufficient facts that any delay in treatment was the result of any unconstitutional policy or custom of Defendant Mulheron." *Id*. at 8; *doc. 28* at 3.

Plaintiff contrarily asserts that "[t]his policy was a cause of the delay in Mr. Jager receiving the necessary medical treatment to treat his personal physical injuries" (*doc. 1.* at 15), and that "[d]ue to lockdown at the SNMCF, Defendant Andrade did not follow-up with Mr. Jager concerning his evaluation by the otolaryngologist until October 8, 2016" (*id*. at 12). Plaintiff further urges the Court in his Response that "one should infer that earlier CT-scan appointments were moved, canceled, or left undone because the facility did not transport prisoners for medical appointments during lockdown" (*doc. 23*

at 4), and "one should infer that medical appointments prior to October 8, 2016 were possible but not done because of lockdown" (*id.*).

Taking the well-pleaded assertions in the Complaint as true and drawing all reasonable inferences in favor of Plaintiff, *see Leverington*, 643 F.3d at 723, Plaintiff has sufficiently alleged that the lockdown policy caused the constitutional harm in question. At the motion to dismiss stage, it is sufficient to allege causation without providing evidence. *See, e.g.*, *Hunt*, 199 F.3d at 1223 (denying motion to dismiss where plaintiff "alleged that a heart attack he suffered in August of 1997 and the subsequent bypass surgery were caused by the inadequate treatment he received for his diabetes and hypertension").

Plaintiff's argument would certainly be stronger if he had provided additional factual details—for example, the exact length of the lockdowns in question, or the exact effect of the alleged policy on the other defendants such as Defendant Andrade. However, as previously noted, plaintiffs are not required to plead "all the factual allegations necessary to sustain a conclusion that defendant violated clearly established law." *Robbins*, 519 F.3d at 1249 (10th Cir. 2008) (quoting *Breidenbach v. Bolish*, 126 F.3d 1288, 1293 (10th Cir. 1997)). It is enough that the allegations in the Complaint, if true, raise the plaintiff's entitlement to relief "above the speculative level." *Twombly*, 550 U.S. at 555. Here, Plaintiff has alleged that 1) Defendant Mulheron is responsible for a policy prohibiting transport for medical appointments during lockdown; 2) at least two

lockdowns occurred during the relevant period; 3) Plaintiff's appointments were delayed as a result of the lockdown policy; and 4) Plaintiff suffered serious harm due to the delay. These facts, taken as true, raise Plaintiff's entitlement to relief above the speculative level by plausibly asserting that Defendant Mulheron's unconstitutional policy caused Plaintiff's injuries.

## IV.    Conclusion

For the foregoing reasons, Defendant Mulheron's Motion to Dismiss for Failure to State a Claim and Qualified Immunity (*doc. 18*) is DENIED.

_____
GREGORY B. WORMUTH
UNITED STATES MAGISTRATE JUDGE
**PRESIDING BY CONSENT**